Good morning. My name is Philip Bach. I'm here on behalf of the plaintiff. The case is about a text message that PayPal sent to Plaintiff Roberts. The text message violated the Federal Telecommunications Privacy Act because it was sent without the plaintiff's prior express consent. The section at issue is 47 U.S.C. 227b1a, and that section prohibits calls to patient rooms in hospitals, to guest rooms in elderly homes, and calls to cell phones. In Satterfield, this Court defined prior express consent as consent that is clearly and unmistakably given. And the FCC says? And the FCC says that if you give somebody your cell phone? Well, they say it very broadly. They say that if you publish your number, then it's consent to receive calls. Well, I understood. They said persons who knowingly release their telephone numbers have in effect given their invitation or permission to be called at the number which they have been given absent instructions to the contrary. Yes, that's right. So there were no instructions to the contrary here. So we're done. Well, there's instructions. I guess that's what I'm asking you to respond to. Yes. This is pretty straight language. It is, and when they said it, they explained why they were saying it. They weren't writing a new statute, and they weren't writing a new regulation. They were interpreting what Congress meant by requiring prior express consent. Well, it doesn't matter what they were doing. What matters is what's in the regulation. Because, I mean, the basis for the regulation is not what I am called upon to interpret. I'm called upon to interpret the language in the regulation itself. So I can look at footnote 57, which is what you're really referring to. Yes. And I understand where you're going, but isn't this a normal business communication, even if it were in the regulation? No, it's not, because it was sent to encourage new business. It wasn't a text message about the transaction the guy had just done. It wasn't about confirming that his money was sent or not sent. So it wasn't a normal business communication? No, it wasn't. Is that a jury issue or is that a legal issue? The district judge didn't decide. I mean, it's probably a jury. The district judge didn't decide, but you're now on appeal, and I'm asking you. Is that a jury issue or a legal issue, even if I get there? I mean, if it was a disputed issue . . . Because if it's a legal issue, I can generally determine as long as it's normal business communication. I'm trying to figure out why this call, which said, Welcome to learn more about my service, visit my .com. I wouldn't have ever read all that, because I'm still a dinosaur. But there it is. To stop notifications, text stop to for more info, text help to. Why isn't that a normal business communication? Nobody suggests that it isn't that. It's merely interpretive. That seems like a legal conclusion, even if we get to where you want to go, which, if I say it's normal business, it is. I don't know why it isn't. Why isn't it? It's normal to advertise. It's normal to say, Come give me some more business someplace else. Why is that not a legal conclusion I can come to pretty quickly? Because it's undisputed that it was to encourage future business. So what? So it's not a normal business communication. That sounds pretty normal. And it's also an immediate response to an action by your client. It's not like we have a series of text messages well into the future. This is a one-time thing. Right after he signs up and they say for more information about using the service, here's your website, click this link. And that's where the communication stops. How is that not normal? Well, I mean, you have to start with the statute that says don't do it at all, zero. And it doesn't say you get to do one just because you could call it normal. And they're trying to rely on an exception. The FCC says we interpret prior express consent to mean if you give somebody your number, they can call you. And we base that interpretation on what Congress said when they wrote the statute. And in that they said we think it would permit normal business calls. And they said, Congress says what they meant by normal business calls was confirming a transaction, telling somebody that a bill had been made. He's just signed up and they're confirming it and are telling him where to get any more information about it. How does that not fit exactly in what you're talking about? It was completely useless to him. It's not ‑‑ it wasn't necessary. It wasn't helpful at all. It was them trying to get a ‑‑ Confirm that he had successfully signed up and told him where to get more information about using the mobile service. Well, I mean, he didn't sign up. He just gave him his phone number. And why did he do that? He already signed up 10 years ago. Why did he give him the phone number? Because he wanted to be able to be contacted by his mobile phone if there was a problem. So they're confirming, okay, we now got your phone number. Here's to find out how to use this thing, the mobile device. I understand. I mean, they didn't even say we'll contact you if there's a problem. I mean, he signs ‑‑ he gives them the number, Your Honor, says, so that they can contact them if there's a problem. They don't contact them if there's a problem. They send them this thing that their witness says was to encourage future business. I've got to say, this is one of the sillier claims I've seen. I've seen lots of claims, but I have a real hard time understanding how this is the kind of harassment that the law is aimed at. It's not really harassment. It's just you can't do any calls. Not even one. And nobody would ‑‑ you know, usually people would say one call. That's not harassing. You know, the guy just said, hi, I think you're sexy. Okay, that's not harassing. He didn't do it 50 times. But you can't do even one call. You can't have one call. If I look at 2008 declaratory ruling by the FCC, it says the prohibition applies regardless of the content of the call. It's not limited only to calls that constitute telephone solicitations. But it also says the provision of a cell number to a creditor as part of a credit app reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number. About the debt. About the debt. So here we are. Again, normal business communications. And if it's a legal conclusion, and that's what we're really talking about since there's no evidence to the contrary, it's just this evidence has to be put under this statute. So if it's a legal conclusion, it seems pretty tough for you. It sounds pretty tough to me. But, I mean, what you're saying is that advertising is normal communications and, therefore, then it's legal. I don't think that's what the statute says. That's even if you get to footnote 57, which I'm not sure applies. But I'm just trying to take your theory as far as you went so I can see what you're trying to say. I understand. So I take the statute. The statute says it is unlawful to make this phone call. And they did it anyway. Okay. And their defense is the FCC says it's okay. All right. Well, we have an FTC in 1992 interpretation of prior express consent. Why doesn't the Hobbs Act prohibit us from reviewing, quote, prior express consent? Under the Hobbs Act, we have no jurisdiction to review that. Not to review it, but to apply it. The Court can apply an FCC interpretation or a regulation or a ruling or a statement. We're not asking you to ignore it or say that it was without basis. We're just saying here's what the FCC says. It's not in a regulation. It's just in a statement on the 31st page or whatever. And they said this is we understand prior express consent to be given by somebody who gives their number to somebody. And when they said that, they said we find support for this interpretation of the statute in the House report. And they cite that. And that House report itself also mentions as a normal business call a call about an existing debt. So something in 2008 isn't, it's not remarkable that they would say that again later because Congress had said it in the late 80s. In 1995, before this text was sent, the FCC said that express consent for a communication encouraging future business is only acceptable when the consumer has clearly expressed an understanding that that's what's going to happen. And nobody says that here. Nobody argues that the plaintiff knew he would get a text in response at all. PayPal didn't tell them he would. And the text that they sent him in response to him giving them a cell phone number so that he could be called if there was problems said if you don't want to receive any more text messages, then you should opt out. So if he had opted out not to receive any more text messages like the one they sent him, he would never have gotten a text message about a future transaction. And I mean, the business of PayPal is just to be the middleman between somebody sending money or receiving money. They're not, it's not a business that requires a lot of hand-holding and exploration with the consumer. It's just they're like a wire transfer service. So the person says I want to send $55 or whatever it was, $55 and some change to somebody using my credit card. He used PayPal to do that. When he did it, they said give us your contact phone number. He gave them his cell phone number. And they have a system to automatically figure out whether a phone number is a cell phone number or something else. When they find out it's a cell phone number, they send him a text message. And the guy said, John Muller, their general counsel, testified that the purpose of the text message was to encourage future business. It wasn't to confirm the transaction, tell him there was a problem, tell him that he owed money. So, you know, whether lawsuits should be filed about text messages isn't really the issue. Congress decided that a long time ago that it's illegal to do it. And PayPal did it. The question is whether they did it with a justification. And our argument is that the justification isn't found in the FCC's 1992 statement. It's not found in 1995. And from then on, the FCC continued saying, ratcheting up and saying no text message. I mean, now they need written, signed permission to send this text message. And we're not, you know, we can't rely on that statute as a cause of action in this case. But it shows that what we're arguing is something that the FCC agrees with, I think. If there's no other questions, I'd like to reserve the rest of my time for rebuttal. You may. Thank you, Your Honor. Thank you, Your Honors. Good morning. May it please the Court. I'm David Salmons on behalf of PayPal. So I think as we've heard, the legal dispute between the parties in this case is actually quite narrow. Plaintiff agrees with PayPal that the FCC's 1992 order interpreting prior express consent is binding on the court and the parties and can't be challenged in this case. He also agrees that that 1992 order makes clear that knowingly releasing your phone number to a company constitutes express consent to be called at that number absent instructions to the contrary. And he concedes that he knowingly provided his cell phone number to PayPal so that it could contact him at that number regarding PayPal's mobile services that he had just signed up for. His sole contention, his sole legal contention, is that the consent that he admits that he gave to PayPal to contact him on his cell phone was limited to what he calls normal business calls, which he asserts excludes the welcome text message here because it somehow constituted advertising. There are two independent and fatal problems with that argument. The first is that at the time that text message was sent, the FCC had made clear in that 92 order that the knowing provision of a phone number would constitute consent even for calls that involved marketing. Remember, that was an order dealing with telemarketing calls. And the next sentence after the one Your Honor quoted states that telemarketers, just like other entities, quote, will not violate the TCPA by calling a number which was provided as one at which the called party wished to be reached. So you can't read the 92 order to exclude somehow express consent for advertising or marketing calls. They applied the rule in that order to telemarketers. The second fatal problem with the argument is that both common sense and experience support the conclusion that it is normal for a business to send a confirmatory message welcoming a customer that just signs up for a new service. Even if you were to focus on context and limit the scope of consent to the so-called normal business calls that the Petitioner or the Plaintiff here seeks, this welcome text would still fit very comfortably within the Plaintiff's consent in this case. And that's precisely what the district court held. It didn't announce a broad rule about consent in all cases. It compared this case to this Court's precedents, and it said that the content of the complained-about text message is very closely related to the circumstances under which the Plaintiff here provided his cell phone number. In fact, the district court noted that there was perfect alignment between the context of Plaintiff's consent and the content of this message. They both dealt with having just signed up for PayPal's mobile services. Could you tell me, counsel, how the Satterfield case affects this case? Yes, Your Honor. I think Satterfield is very helpful to PayPal in this case, as the district court did. If you look at excerpts of record, I believe it's page 8. Let me just turn there, Your Honor. So this is towards the end of the district court's decision in this case. And Satterfield is the primary case on which the district court relied. Satterfield is not a very bad author. They're all good from where I stand, Your Honor. The court, the district court says, second, unlike Satterfield, the content of the complained-about text message here closely related to the circumstances under which the Plaintiff provided his cell phone number. That's what I just quoted. The court goes on to say, the Satterfield Plaintiff provided her cell phone number to Nextones in order to receive a free ringtone and then received a text message from a completely different company, Simon & Schuster, about a completely different subject, a Stephen King novel. In contrast here, the Plaintiff in this case provided his cell phone number in order to receive information regarding PayPal's mobile services as Plaintiff's counsel conceded at the hearing. That was the purpose for providing the number to obtain these mobile services. But, counsel, as I read Satterfield, it analyzed the registration format issue and its relationship to the messages sent by an unaffiliated company, not whether releasing a number to a company always creates consent to receive messages from the same company. Is that your argument? Well, our argument is that, just like the district court held here, that the text message that was sent welcoming a new customer that had just signed up for PayPal's mobile services was within the prior express consent provided when the Plaintiff voluntarily provided his number to sign up for those services. This is not a case where the context somehow switches dramatically. You know, PayPal didn't contact the Plaintiff here with a text message saying, you know, vote for candidate X or something completely unrelated. But I think what my colleague is suggesting, Satterfield did not really cover this situation for prior express consent, did it? No, it was a very different situation, I think, as the district court noted. And I think that's right, Your Honor. But I do think implicit in what the reasoning of Satterfield, the reason that there was not prior express consent for Simon & Schuster to contact the Plaintiff in that case about a novel was because he had provided consent to Nextones about a free ringtone. Implicit in that, I think, is that if Nextone had sent a message with regard to the ringtones, it likely would have been within the scope of consent, because there's alignment there with the context. We have no problem with the idea. Ginsburg. All right. Well, my colleague, Judge Smith, is quite correct. I was trying to make the point that releasing a cell phone number doesn't always create consent to receive messages from the same company, which I was beginning to get from your argument. Well, I think you're right. Yes, Your Honor. I do think that as the state of the FCC's interpretation existed with the time this text message was sent, which is binding here, the 1992 order, I do think is pretty fairly read to mean if you provide the voluntarily provide a phone number to a company, that company can contact you with that number as a general matter, unless there's some instructions or perhaps context that suggests some reason to narrow it. There's no such context here, and, in fact, it's hard to imagine a more closely aligned set of purposes. You sign up for a new service. You receive a text that says, welcome to the new service. I would just note that the plaintiff here is fond of some of the more recent FCC rulemakings that don't apply in this case, but they're not all that helpful to his claim either. One of the ones that is referenced in some of the 28J letters and the like is the 2012 sound bite ruling, which ruled that a confirmatory text message when a customer opts out of receiving text and says don't send me anymore, that sending a follow-up to confirm that that was the intent, that sort of confirmatory text, is still within the scope of the original express consent. And it sort of follows a fortiori, it seems to me, that if your express consent is broad enough to have a confirmatory text when you want to stop a service, it must include a confirmatory text when you first sign up for one saying, welcome, here's how the program works. That's perfectly consistent with consumer expectations. And as the FCC has said, both in that sound bite ruling and, again, in the group me ruling, Congress did not expect the TCPA to be a barrier to normal expected and desired business communications, and that's all we're talking about here. Suppose PayPal sent him a message every week thereafter or every day. Would that still be okay under the, based on the fact that he had given his cell number to PayPal? Yes, Your Honor. And there are numerous cases where, especially in the debt collection cases, where you have some pretty persistent debt collectors who send a large number of messages, and those have been held to be within prior express consent. What matters is that consent was given and that the messages within that consent, not the number of times their action may take place. If the Court has no further questions, thank you. Thank you. Rebuttal. Counsel. Counsel said several times that the plaintiff was signing up for a new service. I don't know what the evidence of that is. The plaintiff was using PayPal's access to their website to make a transaction, and in part of that he updated his information to include his cell phone. The new service, I think, is an app that does the exact same thing as the website, except you can do it on your cell phone. It's not, he didn't sign up for some new service. The services, they act as a middleman to hand money over to different people from A to B or from B to A, but he didn't sign up for a new, you know, house cleaning service or something like that, and they're confirming that he signed up or anything. They're saying, you know, according to their witness, they sent the text message to encourage the guy to use future business, not to welcome him, not to thank him for his continued support, not as a courtesy acknowledging that he wanted to quit or anything else. It was just to encourage him to do more business with them, and that's why it's not a normal business call in the sense that Congress explained what they meant by normal business calls. And I don't think it's consistent with consumer expectations. It's not, I mean, it's not consistent with what Robert said his expectation was in his affidavit, and that's unrebutted. His expectation was that if there's a problem with him sending money to somebody or them sending money to him and PayPal's the middleman handling the transaction, they will let him know. That's it. Not that they will welcome him or contact him with a click here to go find out more information about our other services or whatever. And I think the Cheeseboro versus Best Buy case is an opinion from this court that is analogous because in that situation Best Buy had an automated phone call that was very useful to the consumer. It's telling the guy his points are going to expire if he doesn't use them. He should run to the store and use them or they'll be expired. And this court said, no, that's not a courtesy call. That's an unlawful call because you're not allowed to make that call. And even if it's really helpful and useful, as opposed to this one, which is really not helpful or useful at all. It comes in two text messages. It's really basically useless except that it could confuse the person into opting out to never receive the messages that everybody wants to receive. And because it was not sent with any justification found in the TCPA itself and their justification doesn't fit what the FCC said, how it interpreted the TCPA, either at the beginning in 1992 or later in 1995 or any time thereafter. They've never said you can send advertising text messages merely because somebody gave your phone number to them. For all those reasons, this court should reverse. Thank you. Roberts. Thank both counsel for the arguments. The case just argued is submitted. That concludes the argument calendar for this morning. We'll return. Your Honor, I'm sorry. I didn't notice. I'm sorry. I would normally not do this, but I did leave a fair amount of minutes. I just wanted to point out excerpts of record, page 28, if there's any question about signing up for a new service. That's from the summary judgment hearing. And counsel for the plaintiff stated that the plaintiff had been a member of PayPal for some time, went online and entered his cell phone number. Enough.  Enough. The case argued is submitted. We're adjourned. I thought you had a comment to make. Not more argument to give. I didn't think there was much to talk about. Your Honor. All rise. This court in this session is standing adjourned.
judges: Nelson, Clifton, Smith